UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ION BAROI, et al.,

    Plaintiffs,

v.

PLATINUM CONDOMINIUM DEVELOPMENT, LLC; MARCUS HOTELS, INC.; and MARCUS MANAGEMENT LAS VEGAS, LLC,

    Defendants.

2:09-CV-00671-PMP-GWF

ORDER

Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment Regarding Count One of Complaint (Breach of Contract) (Doc. #161), filed on December 16, 2011. Defendants filed an Opposition (Doc. #177) on January 16, 2012. Plaintiffs filed a Reply (Doc. #187) on January 31, 2012.

Also before the Court is Defendants' Motion for Partial Summary Judgment on Counts 1, 6, 8, 9, 10, and 11 (Doc. #168), filed on December 23, 2011. Plaintiffs filed an Opposition (Doc. #202) on February 9, 2012. Defendants filed a Reply (Doc. #215) on February 29, 2012.

Also before the Court is Defendants' Motion to Strike Affidavit of Gayle A. Kern (Doc. #178), filed on January 16, 2012. Plaintiffs filed an Opposition (Doc. #190) on February 2, 2012. Defendants filed a Reply (Doc. #204) on February 13, 2012.[1]

///

---

[1] The Court will deny this Motion without prejudice to renew at trial, as the Court did not need to consider the affidavit to resolve the parties' cross-motions.

This case arises out of Plaintiffs' purchases of condominium units in Defendant Platinum Condominium Development, LLC's ("Platinum Development") condo/hotel project, the Platinum, located in Las Vegas, Nevada. The Platinum hotel was run by Defendant Marcus Management Las Vegas, LLC ("Marcus Management"). Plaintiffs brought suit in Nevada state court in March 2009, and Platinum Development removed the action to this Court. (Pet. for Removal (Doc. #1).) Among the various claims Plaintiffs assert against Defendants is breach of contract in count one of the Third Amended Complaint. (Third Am. Compl. (Doc. #89).) The parties now cross move for partial summary judgment on this claim. Additionally, Defendants move for summary judgment on Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing (count six), rescission (count eight), unjust enrichment (count nine), tortious interference (count ten), and civil conspiracy (count eleven). Plaintiffs oppose Defendants' Motion. Defendants also move to strike the declaration of Plaintiffs' expert, Gayle Kern, offered in support of Plaintiffs' Motion. Plaintiffs oppose the Motion to Strike.

The Court set forth the factual background in this matter in a separate order filed contemporaneously with this Order. The Court will not repeat the facts here except where necessary to resolve the present motions.

**II. LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue

of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

### III. BREACH OF CONTRACT/COVENANT OF GOOD FAITH & FAIR DEALING

#### A. Waiver

In their Opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendants contend Plaintiffs waived their breach of contract claims because Plaintiffs closed on the condominium units after having been advised about changes between the 2004 and 2006 Public Offering Statements. Defendants contend Plaintiffs received actual notice of the changes through a direct mailing advising Plaintiffs of the amendments. Defendants also contend Plaintiffs received constructive notice because Defendants recorded the 2006 Declaration and subdivision map prior to any Plaintiffs closing on their units.

Plaintiffs respond by arguing genuine issues of material fact remain regarding whether some Plaintiffs received the letter advising of the changes; whether others received it only after closing; and whether the sales agents assured some Plaintiffs there were no material changes and Plaintiffs would lose their deposits if they did not close. Plaintiffs also contend issues of fact remain as to whether Plaintiffs appreciated the nature of the changes when Defendants' sales agents did not know why the changes were made, the 2006 letter did not explain all of the changes, and the 2006 letter did not offer an opportunity to obtain a refund of earnest money deposits due to material changes in the offer. Plaintiffs also argue constructive notice cannot support waiver under these circumstances. Moreover, Plaintiffs contend that even if they acquiesced in the modification, they still have the right to enforce the original contract's terms under the preexisting duty doctrine.

///

"Nevada case law holds that a purchaser who closes an escrow is held to have waived the right to seek damages for any discrepancies he has knowledge of at the time of closing." Thornton v. Agassiz Constr., Inc., 799 P.2d 1106, 1108 (Nev. 1990). A waiver is the "intentional relinquishment of a known right." State, Univ. & Cmty. Coll. Sys. v. Sutton, 103 P.3d 8, 18 (Nev. 2004) (quotation omitted); see also McKeeman v. Gen. Am. Life Ins. Co., 899 P.2d 1124, 1128 (Nev. 1995) ("Waiver requires an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." (quotation omitted)). A waiver is not effective unless done with "full knowledge of all material facts." Sutton, 103 P.3d at 18 (quotation omitted).

The party asserting waiver as a defense bears the burden of establishing waiver. McKellar v. McKellar, 871 P.2d 296, 297 (Nev. 1994). Waiver may be shown either by express agreement or implied from "conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive a right." Id. "If intent is to be inferred from conduct, the conduct must clearly indicate the party's intention." Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Ct. ex rel. Cnty. of Clark, 152 P.3d 737, 740 (Nev. 2007). "Waiver can be implied from conduct such as making payments for or accepting performance which does not meet contract requirements." Udevco, Inc. v. Wagner, 678 P.2d 679, 682 (Nev. 1984). However, such conduct must be done with knowledge of the breach to support waiver. Epperson v. Roloff, 719 P.2d 799, 804 (Nev. 1986). Additionally, even conduct from which waiver may be implied may not support waiver under certain circumstances. See Mill-Spex, Inc. v. Pyramid Precast Corp., 710 P.2d 1387, 1388 (Nev. 1985) (holding a lessee's exercise of its right to renew did not necessarily imply waiver of the lessee's claims against the landlord for breach of its duty to repair where it would not have been feasible for the lessee to relocate and the landlord assured the lessee it would make the repairs). Although the passage of time is a

4

consideration in determining waiver, even an extensive lapse of time will not compel a finding of waiver as a matter of law.  See Nev. Yellow Cab Corp., 152 P.3d at 740 ("[D]elay alone is insufficient to establish a waiver."); Mackintosh v. Cal. Fed. Sav. & Loan Ass'n, 935 P.2d 1154, 1161 (Nev. 1997) (holding substantial evidence supported the trial court's conclusion that an eighteen month delay in attempting to rescind a contract did not constitute waiver); McKellar, 871 P.2d at 297-98 (holding fourteen year period before initiating claim for child support arrearages did not establish waiver where the plaintiff repeatedly requested child support).  Whether there has been a waiver generally is a fact question.  McKellar, 871 P.2d at 297.

        Defendants have not established that no genuine issue of material fact remains that they have met their burden of showing Plaintiffs waived any alleged breaches as a matter of law.  Defendants have not presented any evidence of an express agreement waiving Plaintiffs' rights.  Instead, Defendants attempt to show waiver by implying it from Plaintiffs' conduct in closing on the units.  However, Defendants have not produced evidence that each Plaintiff received the 2006 letter and Public Offering Statement prior to closing.  Some Plaintiffs admitted they received the 2006 Public Offering Statement prior to closing.  (Defs.' Opp'n to Pls.' Mot. for Partial Summ. J. (Doc. #151) ["Defs.' Opp'n"], Exs. 150, 153-54, 162-64, 172.)  Others admit they received the October 2006 letter but deny they received it in October 2006.  (Defs.' Opp'n, Ex. 151 at 3.)  Others deny or cannot recall receiving the October 2006 letter or its attachments, either at all or prior to closing.  (Defs.' Opp'n, Exs. 152, 155-61, 165-71, 173-74.)  Consequently, at least as to the Plaintiffs who deny receiving the 2006 Public Offering Statement prior to closing, Defendants have failed to show those Plaintiffs had knowledge of the amendments.  Further, although the recording of real estate documents can constitute constructive knowledge, Defendants have not established that the entire Public Offering Statement was recorded, as opposed to only the Declaration of Covenants, Conditions and Restrictions

("CC&Rs") and the Final Map.  (See Pls.' Evidentiary Submission in Supp. of Mot. for Summ. J. Regarding Pls.' Count One Breach of Contract (Doc. #162), Ex. 9; Pls.' Mot. for Partial Summ. J. (Doc. #136) ["Pls.' MSJ"], Ex. 28, Attach. D.)

Even if Plaintiffs are charged with constructive knowledge, Defendants have failed to establish no genuine issue of material fact remains that Plaintiffs intended to relinquish their rights to pursue breach of contract claims against Defendants as evidenced by Plaintiffs closing on their units.  While a reasonable fact finder could conclude Plaintiffs intended to waive any breaches by closing and brought this suit only when the real estate market turned unfavorable, such a finding is not compelled as a matter of law.  Defendants did not notify Plaintiffs they could rescind the contract and receive a refund of their earnest money deposits based on the 2006 changes.  (Defs.' Mot. for Partial Summ. J. (Doc. #168) ["Defs.' MSJ"], Ex. 180 at 112; Pls.' MSJ, Ex. 3 at 208.)  Plaintiffs' closings therefore could reflect an effort to avoid losing thousands of dollars in earnest money deposits.  A reasonable fact finder could conclude that in the face of the 2006 changes, which Plaintiffs contend were not supported by any additional consideration, and with no offer to receive a refund, Plaintiffs did not intend to waive their breach of contract claims by closing and then asserting Defendants breached the original contract.  Whether Plaintiffs' approximately three-year delay in bringing suit constitutes waiver is a question for the trier of fact.

**B. Unit Size**

Plaintiffs contend Defendants breached the Purchase Agreement by delivering units that were smaller in size than promised.  Defendants respond that when the contractually specified method of measurement is used, Defendants delivered properly sized units.

The 2004 Public Offering Statement contained illustrative floor plans which ascribed square footage areas to the various unit types.  (Pls.' MSJ, Ex. 16, Attach. N.)  For example, the Solitaire is described as 911 square feet, consisting of 811 square feet

1  "centerline common wall w/outside face hall, exterior," and 100 square feet of terrace.  (Id.)
2  The Princess likewise is described as 1,083 square feet, consisting of 983 square feet
3  "centerline common wall w/outside face hall, exterior," and 100 square feet of terrace.  (Id.)
4  The Princess end suite and Marquis suite are described in similar fashion.  (Id.)

5        In the 2006 Public Offering Statement, the CC&Rs define the "unit," and state
6  that "if walls, floors or ceilings are designated as boundaries of a Unit, all paneling, tiles,
7  wallpaper, painting, finished flooring and any other materials constituting any portion of the
8  finished surfaces thereof are part of the Unit, and all other portions of the walls, floors and
9  ceilings are part of the Commercial Element."  (Pls.' MSJ, Ex. 28, Attach. D, Ex. C.)  The
10 2006 Public Offering Statement also included the "Final Map."  (Pls.' MSJ, Ex. 28, Attach.
11 M.)  The 2006 Final Map includes floor plans similar to the 2004 Public Offering
12 Statement, and specifies that the units' square footage is measured "centerline common wall
13 w/outside face hall, exterior."  (Id.)

14       Plaintiffs' expert, Terry Carter ("Carter"), measured the units "paint to paint,"
15 that is, "from the painted wall along the interior perimeter of each unit."  (Pls.' Opp'n to
16 Defs.' Mot. Summ. J. as to Counts 1, 6, 8, 9, 10 and 11 (Doc. #202) ["Pls.' Opp'n"], Ex. 1.)
17 According to Carter, his measurements are "consistent with industry standards, custom, and
18 practice with respect to measuring condominium units."  (Id.)  Carter contends his method
19 also is consistent with the definition of a "unit" in the 2006 CC&Rs and Nevada Revised
20 Statutes § 116.2102.[2]

---

[2]  Except as otherwise provided by the declaration:
> If walls, floors or ceilings are designated as boundaries of a unit, all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished surfaces thereof are a part of the unit, and all other portions of the walls, floors or ceilings are a part of the common elements.

Nev. Rev. Stat. § 116.2102(1).

7

No genuine issue of material fact remains that Defendants did not breach the contract by delivering units smaller than promised. The contract promised certain square footage based on the method of measuring the units "centerline common wall w/outside face hall, exterior." Carter's use of a different method to measure the units, resulting in different unit square footage, does not raise an issue of fact that Defendants breached the contract. Reference to industry standard or custom is inappropriate where the contract defines how the represented unit square footage was derived. Old Aztec Mine, Inc. v. Brown, 623 P.2d 981, 983 (Nev. 1981) ("Under well-settled rules of contract construction a court has no power to create a new contract for the parties which they have not created or intended themselves.").

Nor do the CC&Rs or § 116.2102 alter this result. While the CC&Rs and the statutory section express what is conveyed as a unit, the representation of the various units' square footage was tied to the means of measurement set forth in the contract. Plaintiffs do not contend the units are improperly sized when the contractual method of measurement is used. (Pls.' Opp'n, Ex. 1-1 at 41-42; Defs.' Mot. for Partial Summ. J. (Doc. #168), Ex. 203.) The Court therefore will grant Defendants' Motion for Partial Summary Judgment on Plaintiffs' breach of contract claim in count one to the extent that claim is based on insufficient unit size.[3]

**C.  2006 Amendments**

In their Motion for Partial Summary Judgment, Plaintiffs contend Defendants breached the 2004 Purchase Agreement by making material modifications to the contract without providing any additional consideration. Plaintiffs thus contend the 2006 changes are without effect under the preexisting duty doctrine. Defendants respond and also move

---

[3] The Court will deny as moot Defendants' Motion for Partial Summary Judgment on Plaintiffs' breach of contract claim in relation to any allegation that Defendants failed to market the Platinum properly. Plaintiffs deny they assert any such claim. (Pls.' Opp'n at 10-11.)

for summary judgment by arguing that the 2004 contract gave them the contractual right to make modifications, and thus the preexisting duty doctrine has no application. Defendants also argue that they were permitted to make changes in the face of unexpected changes in Nevada law.

To show a breach of contract, a plaintiff must establish the defendant materially breached a duty arising under or imposed by the contract, resulting in damages to the plaintiff. Clark Cnty. Sch. Dist. v. Richardson Constr., Inc., 168 P.3d 87, 96 (Nev. 2007); Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). Nevada recognizes the preexisting duty rule. Zhang, 103 P.3d at 23. Under that rule, a contract modification is voidable where the only consideration offered by one of the contracting parties to support the modification consists of a duty that party already owes. See id. at 22-24; Clark Cnty. v. Bonanza No. 1, 615 P.2d 939, 944 (Nev. 1980) ("Consideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do."). Whether some consideration is sufficient to support a modification is a question of fact. Zhang, 103 P.3d at 24 n.22. However, "consideration is not valid unless it is bargained for and given in exchange for an act or promise." Id.

Although the general rule is that a modification must be supported by additional consideration, the parties to a contract may delegate to one of the contracting parties the power to alter or amend the contract, and such a delegation does not render the contract too indefinite to be enforceable and does not require additional consideration to support the amendment.[4] See Facebook, Inc. v. Pac. Nw. Software, Inc., 640 F.3d 1034, 1038 (9th Cir. 2011) (applying California law); Lamb v. Emhart Corp., 47 F.3d 551, 559-60 (2d Cir.

---

[4] Nevada has not expressly adopted this rule. However, the Court predicts Nevada would adopt it, as Nevada often looks to the Restatement and California law for guidance. See, e.g., Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1126 (9th Cir. 2005); Easton Bus. Opp. v. Town Exec. Suites, 230 P.3d 827, 830 (Nev. 2010); HD Supply Facilities Maint., Ltd. v. Bymoen, 210 P.3d 183, 186 (Nev. 2009); Whitemaine v. Aniskovich, 183 P.3d 137, 142-43 (Nev. 2008).

1995); Restatement (Second) of Contracts § 34. However, the party given the contractual right to amend the contract must be "constrained by the rest of the contract and subject to the implied covenant of good faith and fair dealing." Facebook, 640 F.3d at 1038; see also Lamb, 47 F.3d at 560 (stating the power to amend was "in accordance with ascertainable standards"); Nelson v. Heer, 163 P.3d 420, 427 (Nev. 2007) (acknowledging an implied covenant of good faith and fair dealing in every contract); Restatement (Second) of Contracts § 34 & cmts. a-b. A contract amendment also may be enforceable without new consideration if it modifies "a duty under a contract not fully performed on either side," and if the modification is "fair and equitable in view of circumstances not anticipated by the parties when the contract was made."[5] Restatement (Second) of Contracts § 89.

Section 14 of the Purchase Agreement provides that–

> [Platinum Development] reserves the right, prior to Closing, upon notice to Buyer, to make amendments to the Condominium Documents as may be required by any construction or permanent lender, secondary mortgage market agency, public authorities, the title company insuring title to the Unit, or any other amendment deemed reasonably necessary or appropriate by [Platinum Development]; provided, however, that no such amendment shall (i) result in a change to the Purchase Price hereunder, (ii) require a material physical modification of the layout or location of the Unit or the Common Elements, (iii) materially decrease or limit [Platinum Development's] obligations hereunder, or (iv) materially change the percentage interest of the Unit as provided in the Condominium Documents.

(Pls.' MSJ, Ex. 6.) Because the parties delegated to Platinum Development the contractual right to make amendments, the 2006 Public Offering Statement did not require new consideration and the preexisting duty doctrine does not apply. The Court therefore will deny Plaintiffs' Motion for Partial Summary Judgment on their breach of contract claim, as the Motion is based entirely on the preexisting duty doctrine.

///

---

[5] Nevada has not expressly adopted this section of the Restatement, but the Court concludes Nevada would do so for the same reasons as set forth in footnote 3.

1      Instead, Platinum Development's contractual right to amend is constrained by the
2 contract itself and the covenant of good faith and fair dealing.  As to the contract, it is
3 undisputed that the 2006 Public Offering Statement did not result in a change to the
4 purchase price.  Rather, the parties dispute whether Platinum Development's obligations
5 were materially decreased or limited, and whether there was a material change in the units'
6 percentage interests or a material physical modification.
7      In their Motion for Summary Judgment, Defendants argue that their obligations
8 were not materially decreased or limited by the changes, and in fact, increased as
9 Defendants agreed to maintain additional areas as Commercial Elements that formerly were
10 Common Elements.  Defendants contend that the percentage interest of each unit remained
11 precisely the same; the only thing that changed was the amount of property contained within
12 the category of Common Elements.
13      Plaintiffs respond that Defendants effectively admit that the percentage interest
14 of each unit was decreased because each unit owned less property after the amendments
15 transferred nearly all Common Elements to Commercial Elements in the 2006 Public
16 Offering Statement.  Plaintiffs contend this same change effected a material change in the
17 physical layout of the Common Elements.  Plaintiffs also argue that many other material
18 changes decreased Defendants' obligations because Plaintiffs lost the ability to control
19 Defendants' performance or to control associated fees and costs.
20      Under a literal reading of the 2004 and 2006 Public Offering Statements, each
21 unit retained the same percentage ownership interest in the Common Elements following
22 the amendments.  However, viewing the evidence in the light most favorable to Plaintiffs,
23 the non-moving party on this issue, a reasonable fact finder could find Defendants'
24 unilateral amendments defining the Common Elements violated the contract as constrained
25 by the covenant of good faith and fair dealing.  Under the 2004 Public Offering Statement,
26 Common Elements included items such as infrastructure, roofs, chimneys, patios,

courtyards, exits, entrances, utility systems, pools, spas, elevators, and walking areas.  (Pls.' MSJ, Ex. 1.)  However, under the 2006 Public Offering Statement, the Common Elements consisted only of the air space above the hotel and the subsurface structure.  (Pls.' MSJ, Ex. 2.)  A reasonable fact finder could find this amendment breached the contract by re-defining the Common Elements so as to effectively and for all practical purposes reduce the percentage of unit owners' interests in the Common Elements in violation of Section 14 of the Purchase Agreement.  Additionally, a reasonable fact finder could find these changes altered the physical layout or location of the Common Elements.

        Likewise, viewing the evidence in the light most favorable to Plaintiffs, a reasonable fact finder could find changes in the control and oversight over terms such as hotel management, fees and costs, and easements breached the covenant of good faith and fair dealing, and consequently violated Section 14 of the Purchase Agreement.  A reasonable fact finder could find the various amendments decreased or limited Platinum Development's obligations to deliver condominium units subject to certain rights and interests by shifting ownership and control away from the Association to the Hotel Owner, which was not subject to oversight by the unit owners.  Through the Association, unit owners could exercise some control over performance of hotel management duties, fees and costs expended and assessed, and related operational duties under the CC&Rs and Chapter 116 of the Nevada Revised Statutes.  Although Defendants contend any such changes were not material because the purpose of the agreement was for Defendants to convey a condominium unit for a certain price, a reasonable fact finder could find the incidents of control were material, particularly where the Purchase Agreement provided that the property being conveyed was a unit "together with and subject to the rights, interests, obligations and limitations set forth in the Condominium Documents . . . ."  (Pls.' MSJ, Ex. 6, Section 1.)

///

1          Finally, a reasonable fact finder could find the amendments were not based on
2  unanticipated developments and were not fair and equitable under the circumstances.
3  Although Defendants contend the amendments were made in response to changes in
4  Nevada law, Defendants do not present evidence establishing as a matter of law that any
5  particular amendment was necessitated by changes in Nevada law or that the changes were
6  fair and equitable to unit owners under the circumstances.
7          For example, Defendants contend a change in the liquor licensing law led
8  Defendants to conclude that obtaining a liquor license for the Association would be
9  burdensome.  Defendants thus decided to transfer the hotel hallways and pool areas to
10 Commercial Elements so the hotel could provide alcoholic beverages to hotel guests
11 through room service.  However, Defendants do not present evidence that securing a liquor
12 license was unanticipated or that any particular change in the liquor licensing law created
13 the need to make any particular contractual amendment.  Defendants also fail to present
14 evidence establishing as a matter of law that their chosen solution of transferring the
15 hallways and other Common Elements to Commercial Elements were fair and equitable
16 changes in response to any change in the law.  Moreover, Defendants do not explain why
17 other changes were either precipitated by a change in the law or fair and equitable to unit
18 owners, including eliminating the Hotel Manager as a limited term contract subject to
19 cancellation upon default in favor of a perpetual relationship with the Hotel Owner not
20 subject to cancellation; a change in the payment of most of the capitalization fee to the
21 Hotel Owner rather than the Association; imposing various fees against unit owners payable
22 to the Hotel Owner, including maintenance costs and insurance costs; granting the Hotel
23 Owner lien and foreclosure rights against unit owners; removing unit owners' right to audit
24 finances; allowing the Hotel Owner to charge 18% interest on assessments due and owing
25 from unit owners; and waiving unit owners' right to a jury trial.
26 ///

1    The Court therefore will deny Defendants' Motion for Partial Summary Judgment
2 on Plaintiffs' breach of contract claim (count one) and breach of the covenant of good faith
3 and fair dealing claim (count six) with respect to the 2006 amendments.  Additionally,
4 because the only basis for Defendants' Motion for Partial Summary Judgment regarding
5 Plaintiffs' tortious interference and civil conspiracy claims is that Defendants acted in
6 conformity with what the contract allowed, the Court also will deny Defendants' Motion
7 with respect to Plaintiffs' tortious interference (count ten) and civil conspiracy (count
8 eleven) claims.

**IV.  RESCISSION**

In their Motion for Partial Summary Judgment, Defendants argue they are
entitled to judgment on Plaintiffs' rescission claim in count eight because they did not
breach the contract, and any such breach did not defeat the object of the contract so as to
entitle Plaintiffs to rescind the contract.  Defendants also argue that because Plaintiffs
accepted the amended contracts for years and did not object until the real estate market
plummeted, the Court should not grant Plaintiffs the equitable remedy of rescission.

Plaintiffs respond that they seek rescission as a remedy not only for the breach of
contract claim, but in relation to their fraud claims.  As to rescission based on breach of
contract, Plaintiffs argue they have raised issues of fact that Defendants materially breached
contractual duties central to the purpose behind the Purchase Agreement.  Plaintiffs also
contend they should not be barred from pursuing this remedy because they brought their
rescission claims from the inception of the litigation and Defendants have not identified any
prejudice.

Under Nevada law, rescission based on a contractual breach "is an equitable
remedy which totally abrogates a contract and which seeks to place the parties in the
position they occupied prior to executing the contract." Bergstrom v. Estate of DeVoe, 854
P.2d 860, 861 (Nev. 1993).  If a contract is rescinded, the contract no longer is enforceable.

Awada v. Shuffle Master, Inc., 173 P.3d 707, 713 (Nev. 2007).  Consequently, a plaintiff may not pursue at trial remedies for breach of contract and rescission.  Id.  Rather, the plaintiff must elect at trial which remedy he or she wishes to pursue for the alleged breach.  Bergstrom, 854 P.2d at 861-62 (stating a party "cannot at the same time affirm the contract by retaining its benefits and rescind it by repudiating its burdens." (quotation omitted)).

Whether to rescind the contract lies within the Court's discretion.  Canepa v. Durham, 198 P.2d 290, 294 (Nev. 1948).  "A partial failure of performance of a contract will not give ground for its rescission unless it defeats the very object of the contract or renders that object impossible of attainment, or unless it concerns a matter of such prime importance that the contract would not have been made if default in that particular had been expected or contemplated."  Id.  Additionally, the Court may consider whether the party seeking rescission did so within a reasonable time under the circumstances.  Mackintosh, 935 P.2d at 1161 (holding eighteen-month delay in filing suit after learning of severity of flooding in home's basement was not so unreasonable as to preclude the remedy of rescission).  The fact that the statute of limitations has not run weighs against finding unreasonable delay.  Id.  However, where the delay prejudices the other party to the contract, rescission may be appropriate.  Id.

Here, as discussed above, genuine issues of material fact remain regarding whether Defendants materially breached the contract.  Defendants contend any breach did not defeat the very object of the contract because the object was for Defendants to sell condominium units at a certain price.  However, Plaintiffs have raised sufficient evidence that the object of the contract was the sale of a condominium unit along with certain rights as set forth in the Condominium Documents and Chapter 116 of the Nevada Revised Statutes.  Accordingly, at this stage of the proceedings, the Court cannot say as a matter of law that rescission is an inappropriate remedy.

///

Likewise, although Plaintiffs delayed several years after closing on the units before bringing their claims, delay alone will not necessarily preclude rescission as a remedy, particularly where, as here, the statute of limitations has not run. Defendants' arguments regarding the timing of Plaintiffs' claims do not lack force and ultimately may persuade the Court that rescission would be inequitable. But at this stage of the proceedings, the Court will not preclude the remedy as a matter of law. However, the Court notes that Plaintiffs will have to elect their choice of remedy—breach of contract damages or rescission—at trial. The Court therefore will deny Defendants' Motion for Partial Summary Judgment on the remedy of rescission.

**V. UNJUST ENRICHMENT**

In their Motion for Partial Summary Judgment, Defendants argue they are entitled to judgment on Plaintiffs' unjust enrichment claim in count nine because a valid contract exists governing the parties' relationship. Defendants contend Plaintiffs have no unjust enrichment claim against Defendant Marcus Hotels, Inc. ("Marcus Hotels") even though no direct contractual relationship exists because if Marcus Hotels was unjustly enriched, it was only through the contractual relationship between Plaintiffs and Marcus Hotels' subsidiaries, Platinum Development and Marcus Management. Defendants further contend Plaintiffs have presented no evidence sufficient to pierce the corporate veil.

Plaintiffs respond that this claim is solely against Defendant Marcus Hotels, with which Plaintiffs have no contract. Plaintiffs contend the evidence shows Plaintiffs' money flowed up the corporate chain to Marcus Hotels, and thus Marcus Hotels was unjustly enriched.

Under Nevada law, unjust enrichment is an implied contract which "occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." In re Amerco Derivative Litig., 252 P.3d 681, 703 (Nev. 2011) (quotation omitted); Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d

182, 187 (Nev. 1997).  An unjust enrichment claim cannot lie where an express written contract exists "because no agreement can be implied when there is an express agreement." Leasepartners Corp., 942 P.2d at 187.  Further, a plaintiff may not pursue an unjust enrichment claim against a parent corporation where the plaintiff has an express written contract with a subsidiary absent a showing of alter ego or some other theory of liability. See Lipshie v. Tracy Inv. Co., 566 P.2d 819, 824 (Nev. 1977) (holding the plaintiff's unjust enrichment claim against a former parent corporation of the counterparty to a contract was "embraced" by the resolution of the alter ego claim).

Here, an express written contracts exist between Plaintiffs and Platinum Development and Marcus Management.  Although there is no express written contract between Plaintiffs and Defendant Marcus Hotels, Marcus Hotels is the parent of Platinum Development and Marcus Management.  The only benefit Plaintiffs conferred on Marcus Hotels arises out of the written contracts with the subsidiaries and the upward flow of benefits derived from those contracts through the parent/subsidiary relationship.  To allow Plaintiffs' unjust enrichment claim under these circumstances effectively would be an end run around the alter ego doctrine, which Nevada law does not allow.

Plaintiffs' reliance on Leasepartners Corp. is unavailing.  In that case, the plaintiff installed a sign on a hotel owned by an entity with whom the plaintiff did not have a contract.  942 P.2d at 183-85.  Rather, the plaintiff had a contract with the lessee, an entity which was not affiliated with the lessor.  Id.  Thus, although a contract existed between the plaintiff and the lessee, and another contract existed between the lessee and the lessor, no contract existed between the plaintiff and the lessor.  Id. at 187.  The plaintiff thus could pursue an unjust enrichment claim against the lessor.  Id.  However, Leasepartners Corp. does not address the situation where the unjust enrichment claim lies against the parent corporation only by virtue of a breach of a written contract between the plaintiff and the parent corporation's subsidiary.  Under Lipshie, no unjust enrichment claim is available

17

under those circumstances absent alter ego or some similar theory of recovery against the parent. The Court therefore will grant Defendants' Motion for Partial Summary Judgment on Plaintiffs' unjust enrichment claim in count nine.

**VI. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment Regarding Count One of Complaint (Breach of Contract) (Doc. #161) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Counts 1, 6, 8, 9, 10, and 11 (Doc. #168) is hereby GRANTED in part and DENIED in part. The Motion is granted as to Plaintiffs' breach of contract claim in count one to the extent it is based on improper unit size and as to Plaintiffs' unjust enrichment claim in count nine. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Affidavit of Gayle A. Kern (Doc. #178) is hereby DENIED without prejudice to renew at trial.

DATED: July 10, 2012

_____
PHILIP M. PRO
United States District Judge