UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ION BAROI, et al., ) | |
| ) | |
| Plaintiffs, ) | 2:09-CV-00671-PMP-GWF |
| ) | |
| v. ) | |
| ) | |
| PLATINUM CONDOMINIUM ) | ORDER |
| DEVELOPMENT, LLC; MARCUS ) | |
| HOTELS, INC.; and MARCUS ) | |
| MANAGEMENT LAS VEGAS, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Presently before the Court is Defendants' Motion for Partial Summary Judgment on Count 14 (Doc. #165), filed on December 23, 2011. Plaintiffs filed an Opposition (Doc. #193) on February 8, 2012. Defendants filed a Reply (Doc. #216) on February 29, 2012. Defendants filed a Notice of Supplemental Authority (Doc. #221) on April 17, 2012. Plaintiffs filed a Response (Doc. #223) on May 4, 2012.

This case arises out of Plaintiffs' purchases of condominium units in Defendant Platinum Condominium Development, LLC's ("Platinum Development") condo/hotel project, the Platinum, located in Las Vegas, Nevada. The Platinum hotel was run by Defendant Marcus Management Las Vegas, LLC ("Marcus Management"). Plaintiffs brought suit in Nevada state court in March 2009, and Platinum Development removed the action to this Court. (Pet. for Removal (Doc. #1).)

1    Among the various claims Plaintiffs assert against Defendants are violations of

2    the Interstate Land Sales Full Disclosure Act ("ILSA") (count 14).  (Third Am. Compl.

3    (Doc. #89).)  Specifically, Plaintiffs allege Defendants violated 15 U.S.C. § 1703(a)(1)(A)-

4    (D), which generally require a seller involved in a real estate sale covered by ILSA to make

5    certain disclosures to purchasers.  (Id. at 39-40.)  Plaintiffs also allege Defendants violated

6    15 U.S.C. § 1703(a)(2)(A)-(C), which prohibit the seller from engaging in fraud in relation

7    to ILSA-covered real estate sales.  (Id. at 40.)  Plaintiffs seek damages and rescission of the

8    Purchase Agreements.  (Id. at 45.)

9    The Court set forth the factual background in this matter in a separate order filed

10   this date.  The Court will not repeat the facts here except where necessary to resolve the

11   present motions.

12   Defendants move for summary judgment on Plaintiffs' ILSA claims in count 14.

13   First, Defendants argue ILSA does not apply to Defendants' sales of units at the Platinum

14   because the Platinum falls within an exception to ILSA's coverage where the seller is

15   contractually obligated to complete construction within two years.  Second, Defendants

16   contend the applicable statute of limitations bars Plaintiffs' claims under § 1703(a)(1) and

17   for rescission.  Plaintiffs respond that the exception to ILSA coverage does not apply

18   because the two-year obligation in the Purchase Agreements is illusory.  Plaintiffs concede

19   some of their claims are time-barred, but contend their fraud-based ILSA claims and the

20   rescission remedy are not time-barred.

21   **I. LEGAL STANDARD**

22   Summary judgment is appropriate if the pleadings, the discovery and disclosure

23   materials on file, and any affidavits show that "there is no genuine dispute as to any

24   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

25   56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the

26   governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An

1   issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find

2   for the non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th

3   Cir. 2002).  Initially, the moving party bears the burden of proving there is no genuine issue

4   of material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the

5   moving party meets its burden, the burden shifts to the non-moving party to produce

6   evidence that a genuine issue of material fact remains for trial.  Id.  The Court views all

7   evidence in the light most favorable to the non-moving party.  Id.

8   **II.  DISCUSSION**

9          ILSA is aimed at preventing fraud in interstate land transactions.  De Luz

10   Ranchos Inv., Ltd. v. Coldwell Banker & Co., 608 F.2d 1297, 1302 (9th Cir. 1979).  ILSA

11   pursues this goal by requiring persons engaged in certain interstate land sales to make a

12   variety of disclosures.  15 U.S.C. § 1703(a)(1).  It also prohibits those persons from

13   engaging in fraud in relation to such land sales.  Id. § 1703(a)(2).  Specifically as it relates

14   to the present lawsuit, ILSA makes it unlawful for a seller to use interstate transportation,

15   communication in interstate commerce, or the mails–

16          (1) with respect to the sale or lease of any lot not exempt under section
           1702 of this title--
17                  (A) to sell or lease any lot unless a statement of record
                   with respect to such lot is in effect in accordance with
18                  section 1706 of this title;
                   (B) to sell or lease any lot unless a printed property
19                  report, meeting the requirements of section 1707 of this
                   title, has been furnished to the purchaser or lessee in
20                  advance of the signing of any contract or agreement by
                   such purchaser or lessee;
21                  (C) to sell or lease any lot where any part of the
                   statement of record or the property report contained an
22                  untrue statement of a material fact or omitted to state a
                   material fact required to be stated therein pursuant to
23                  sections 1704 through 1707 of this title or any
                   regulations thereunder; or
24                  (D) to display or deliver to prospective purchasers or
                   lessees advertising and promotional material which is
25                  inconsistent with information required to be disclosed in
                   the property report; or
26          (2) with respect to the sale or lease, or offer to sell or lease, any lot not

3

1   exempt under section 1702(a) of this title--
            (A) to employ any device, scheme, or artifice to defraud;
2            (B) to obtain money or property by means of any untrue
            statement of a material fact, or any omission to state a
3            material fact necessary in order to make the statements
            made (in light of the circumstances in which they were
4            made and within the context of the overall offer and sale
            or lease) not misleading, with respect to any information
5            pertinent to the lot or subdivision; [or]
            (C) to engage in any transaction, practice, or course of
6            business which operates or would operate as a fraud or
            deceit upon a purchaser . . . .

7

8   Id. § 1703(a).  ILSA provides a private right of action against a seller who violates these

9   provisions.  Id. § 1709(a).

10          ILSA does not apply to "the sale or lease of any improved land on which there is

11   a residential, commercial, condominium, or industrial building, or the sale or lease of land

12   under a contract obligating the seller or lessor to erect such a building thereon within a

13   period of two years."  Id. § 1702(a)(2).  To determine whether the contract obligates the

14   seller to erect the building within two years, and thus exempts the seller from ILSA's

15   requirements, the Court evaluates the contract's language in light of both federal and state

16   law.  Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 854 (11th Cir. 2009).  First, the Court

17   interprets ILSA under federal law because ILSA is a federal statute.  Id.  Under federal law,

18   a contract "obligates" completion within two years when it "imposes a legal duty on the

19   developer to perform his promise to construct the condominium or other building within

20   two years."  Id.  "A legal duty, contractual or otherwise, is one that the law will require a

21   party to perform, or to pay for not performing, by bringing to bear public force."  Id. at 855.

22          The Court looks to state law to determine whether the contractual obligation is

23   one which the relevant state law will require the seller to perform.  Id. at 854.  If state law

24   will compel performance through remedies such as specific performance or rescission plus

25   reimbursement and actual damages, then the contract obligates completion within two

26   years.  Id. at 855 ("Specific performance or injunctive relief, if vigorously pursued,

4

1   ordinarily will be enough to force a seller to fulfill its contractual obligations within the

2   time a contract requires.").

3          Additionally, the contractual duty must be one that does not render illusory the

4   promise to erect the building within two years.  Id. at 857-58.  A contractual promise to

5   build within two years may be illusory if the contract provides a mechanism for the seller to

6   evade the requirement for reasons that are within the seller's discretion or control.  Id.

7   However, that does not mean the seller's obligation to meet the two-year deadline must be

8   "unconditional."  Atteberry v. Maumelle Co., 60 F.3d 415, 420 (8th Cir. 1995).  For

9   example, a force majeure clause in a contract does not render the two-year completion

10  promise illusory so long as the events triggering the clause are beyond the developer's

11  control.  Stein, 586 F.3d at 857-58.  Additionally, the contractual force majeure clause may

12  be broader than the state's law regarding the defense of impossibility, so long as the state

13  would enforce such a force majeure clause as a matter of contract law.  Id.  Consequently,

14  even if a contract "excuses delays beyond the seller's control, it is still one 'obligating' [the

15  seller] to complete construction of the condominium within two years for purposes of

16  § 1702(a)(2)."  Id. at 858.

17         Nevada will enforce contractual obligations through the remedy of specific

18  performance where appropriate, particularly in real estate transactions because real property

19  is "unique," and damages therefore may be an inadequate remedy.  Stoltz v. Grimm, 689

20  P.2d 927, 930 (Nev. 1984).  Additionally, Nevada will enforce contractual provisions

21  excusing performance that are broader than the common law defense of impossibility so

22  long as the "contingency is provided for in the contract."  Nebaco, Inc. v. Riverview Realty

23  Co., 482 P.2d 305, 307 (Nev. 1971).

24  ///

25  ///

26  ///

1    Here, Defendants entered into the first Purchase Agreements for sale of units at

2    the Platinum in March 2004.[1]  (Defs.' Opp'n to Pls.' Mot. Summ. J. (Doc. #152), App. A.)

3    Section 9 of the Purchase Agreements sets forth the contractual duty to perform within two

4    years:

5            SECTION 9-CLOSING AND OCCUPANCY:  At Seller's office or
             the office of the Title Insurer within 30 days after Seller gives Buyer
6            notice of the substantial completion of the Unit, but not later than
             December 31, 2005, with the specific date and at a time to be
7            determined by Seller (the "Closing Date") (or at such other date, time
             and place as the parties mutually agree).  The Closing Date may be
8            extended by Seller in accordance with Section 18 hereof.

9    (Pls.' MSJ, Ex. 2.)  Section 18, in turn, is a force majeure clause which states:

10           SECTION 18-CONSTRUCTION DELAYS:  The parties acknowledge
11           that the Unit will be part of a newly-constructed condominium project.
             If Seller is delayed in the construction of the Unit for reasons beyond
12           the control of Seller, then the time for performance of Seller's
             obligations shall be extended for the period of such delay.  Reasons
13           beyond the control of Seller shall include, by way of illustration, acts
             of God, fire, earthquake, flood, explosion, acts of governmental
14           agencies or delays in construction resulting from labor disputes,
             shortages of construction materials, weather or unexpected adverse soil
15           or other site conditions.

16   (Id.)

17           Section 5 provides that five days prior to Closing, the buyer and a representative

18   of Defendants will inspect the unit, "during which inspection the parties shall agree in

19   writing upon which items, if any, respecting the Unit are incomplete or require some

20   corrective action."  (Id.)  Defendants then must complete or repair the identified items,

21   referred to as "Punch List Items," "as expeditiously as possible."  (Id.)  However,

22   Defendants' "failure . . . to complete all Punch List Items by the date of Closing shall not

23   _____

24           [1] Plaintiffs concede that four unit purchases are not covered by ILSA under the first clause of
     § 1702(a)(2) because Plaintiffs purchased those units after the Platinum was constructed.  15 U.S.C.
25   § 1702(a)(2) (exempting from ILSA's coverage "the sale or lease of any improved land on which there
     is a residential, commercial, condominium, or industrial building . . . ."); (Pls.' Opp'n to Mot. of Defs.
26   for Partial Summ. J. (Doc. #193) at 9 n.3.).

1   result in a delay of the Closing . . . unless the nature of the incomplete Punch List Items is

2   such that the Unit is not substantially complete by the date scheduled for Closing, in which

3   case the Closing shall be delayed until such time as the Unit is substantially complete."

4   (Id.)  Pursuant to Section 5, a unit is substantially complete "when it may be legally

5   occupied as a hotel rental unit."  (Id.)

6        Defendants contend that Section 18 does not render the two-year completion

7   promise illusory because it permits extensions only for circumstances beyond Defendants'

8   control.  Plaintiffs respond that Section 18 makes the two-year completion promise illusory

9   because the contract allows for delays beyond what Nevada law would permit under a

10  common law impossibility defense.  Additionally, Plaintiffs contend some of the acts within

11  the section are within Defendants' control, such as labor disruptions, fires, or explosions.

12  Plaintiffs also argue Section 5 renders the promise to perform within two years illusory

13  because it permits a delay of closing until the unit is complete, and it remained within

14  Defendants' discretion and control as to when to complete a unit.

15       Defendants reply that a force majeure clause such as Section 18 may be broader

16  than the state's common law impossibility defense so long as the clause permits delays due

17  only to events beyond Defendants' control.  As to Section 5, Defendants contend it permits

18  a delay in closing, but any such delay may not exceed the December 31, 2005, date in

19  Section 9.  Defendants also argue Section 5 requires the parties to agree on the Punch List

20  Items, and therefore it is not solely within Defendants' control to delay closing based on

21  Section 5.  Finally, Defendants argue that whether a unit is substantially complete is

22  measured by an objective standard under the contract as a unit which can be legally

23  occupied as a hotel room.  Defendants thus contend the timing of closing was not within

24  their discretion or control.

25       Section 5 does not render Defendants' obligation to perform within two years

26  illusory.  Nothing in Section 5 suggests that Defendants may extend the Closing Date

1  beyond the December 31, 2005, date in Section 9.  Section 9 indicates that the only

2  contractual means by which Defendants could extend the Closing Date beyond December

3  31, 2005, was through Section 18, not Section 5.

4       Section 18 also does not render the two-year completion promise illusory.

5  Section 18 permits extension of Defendants' performance only for "reasons beyond the

6  control of Seller."  (Pls.' MSJ, Ex. 2.)  Section 18 then gives examples of reasons beyond

7  Defendants' control.  While theoretically a fire, explosion, or labor dispute could be within

8  Defendants' control, the contract does not allow an extension of the time of performance

9  unless the reason is beyond Defendants' control.  Thus, to the extent any fire, explosion, or

10  labor dispute was within Defendants' control, Section 18 would not excuse a delay in

11  performance.

12       The fact that an impossibility defense under Nevada common law may be

13  narrower than Section 18 does not render the promise illusory because to the extent

14  Defendants missed the two-year deadline for a reason not within their control, Plaintiffs

15  could have exercised their rights under Section 17 of the Purchase Agreements and Nevada

16  breach of contract law to pursue "all applicable legal and equitable remedies, including,

17  without limitation, specific performance."  (Id.)  The force of Nevada contract law and the

18  availability of specific performance as a remedy are sufficient to compel Defendants'

19  performance such that they were obligated to perform within two years within the meaning

20  of § 1702(a)(2).

21       The Court therefore will grant Defendants' Motion for Partial Summary

22  Judgment on Count 14 because ILSA does not apply to Plaintiffs' purchases of units at the

23  Platinum.  Because ILSA does not apply, the Court need not address the parties' arguments

24  regarding whether Plaintiffs' ILSA claims are time-barred.

25  ///

26  ///

8

**III.  CONCLUSION**

      IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment on Count 14 (Doc. #165) is hereby GRANTED.

DATED:  July 10, 2012

                            _____
                            PHILIP M. PRO
                            United States District Judge