UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| ION BAROI, et al., | ) |
| | ) |
| Plaintiffs, | )  2:09-CV-00671-PMP-GWF |
| | ) |
| v. | ) |
| | ) |
| PLATINUM CONDOMINIUM | )  ORDER |
| DEVELOPMENT, LLC; MARCUS | ) |
| HOTELS, INC.; and MARCUS | ) |
| MANAGEMENT LAS VEGAS, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Presently before the Court are Plaintiffs' Motion for Reconsideration of Ruling Dismissing Plaintiffs' State Securities Claims Based Upon Statute of Limitations (Doc. #238), filed on August 1, 2012, and Plaintiffs' Motion to Clarify and for Reconsideration Granting Partial Summary Judgment to Certain Plaintiffs (Doc. #241), filed on August 10, 2012.  Defendants filed a consolidated Opposition (Doc. #245) on August 31, 2012.  Plaintiffs filed Replies (Doc. #251, #252) on September 17, 2012.

The Court has set out the factual record in this case in prior Orders, and the Court will not repeat the facts here except where necessary.  Plaintiffs' two Motions for Reconsideration focus on the portion of the Court's Order (Doc. #229) dated July 11, 2012, that held Plaintiffs' state law claims in count fifteen of the Third Amended Complaint (Doc. #89) for the sale of a non-registered security were time-barred.  In their first Motion (Doc.

#238), Plaintiffs argue the Court's ruling ignored the distinction between an offer to sell and a sale, both of which Nevada law prohibits for unregistered securities. Plaintiffs contend the Court erroneously treated the 2004 Purchase Agreements as sales instead of offers, and that the sales did not occur until the 2006 and 2007 closings. Plaintiffs also argue the Court erred in its application of the discovery rule.

In their second Motion (Doc. #241), Plaintiffs again argue that the Purchase Agreements are offers to sell, and the closings are sales. Plaintiffs thus contend that certain Plaintiffs who did not close on their units until 2006 and 2007 are within the limitations period, and the Court should not only reconsider its prior ruling against Plaintiffs, but should enter summary judgment in favor of these particular Plaintiffs on the issue of liability on their non-registration claims. Plaintiffs also contend Plaintiff Sandi James ("James") should be awarded summary judgment because she signed Purchase Agreements on two of her units in December 2006 and January 2007. Plaintiffs thus contend that even if the Purchase Agreement is the relevant trigger for the limitations period, her non-registration claims are timely as to these two units.

Defendants respond that the Court should not consider Plaintiffs' Motions because Plaintiffs either already argued these points or could have argued them but did not during the original summary judgment briefing. Defendants also argue that under Nevada securities law, the Purchase Agreements were binding contracts to sell securities and therefore the Purchase Agreements were sales, not offers to sell. Defendants thus contend the limitations period properly runs from the date of the Purchase Agreements, not the closings. As to the discovery rule, Defendants argue Plaintiffs discovered all facts necessary to bring their claims at the time they signed the Purchase Agreements, and Plaintiffs present no evidence as to when they discovered their non-registration claims. Finally, as to Plaintiff James, Defendants argue that although she signed two Purchase Agreements within the limitations period, she purchased other units more than two years

prior, and thus her non-registration claims are time-barred even for sales occurring within the limitations period.

# I. DISCUSSION

The Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as the Court has jurisdiction. City of L.A., Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis and quotation omitted). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." In re AgriBioTech, Inc., 319 B.R. 207, 209 (D. Nev. 2004).

### A. Discovery Rule

Plaintiffs' Motion for Reconsideration with respect to the discovery rule is a rehash of prior arguments which the Court already has rejected. Even if Plaintiffs' legal argument is correct, Plaintiffs have failed to present evidence raising an issue of fact as to when they discovered their claims and why Plaintiffs did not or could not have discovered their non-registration claims within the limitations period. The Court therefore will deny reconsideration based on the application of the discovery rule.

### B. Offer to Sell/Sale

In the prior Order (Doc. #229), the Court held Plaintiffs' non-registration claims were time-barred:

> Plaintiffs knew all facts giving rise to their failure to register claims no later than when they signed their purchase agreements in 2006 and 2007. Plaintiffs allege in the Third Amended Complaint, and testified at their depositions, that Defendants were marketing an investment. The securities' status as registered or unregistered was publicly

> available information capable of discovery through reasonable care. See Nev. Rev. Stat. § 90.730. Plaintiffs therefore had all facts necessary to bring their registration claims at the time they signed their purchase agreements, even if they did not understand the legal significance of those facts until later.

(Order (Doc. #229) at 27.) Plaintiffs correctly point out the typographical error in the prior Order regarding the dates the Purchase Agreements were signed. It is undisputed, except as to Plaintiff James discussed below, that all Purchase Agreements were signed in 2004, not 2006 and 2007.

Plaintiffs now move the Court to reconsider this ruling as to all Plaintiffs, contending that the Court erred by failing to distinguish between the signing of the Purchase Agreements, which Plaintiffs characterize as an offer to sell, and the closings, which Plaintiffs characterize as sales. Plaintiffs contend that because the Nevada statute imposes civil liability for both offers to sell and sales, the statute of limitations should run from the closings, which were in 2006 and 2007, and thus Plaintiffs' claims for sales of unregistered securities would be timely. Defendants respond that Plaintiffs could have raised this argument and presented their authorities in prior briefing but did not, and the Court therefore should not consider the argument on reconsideration. On the merits, Defendants contend the relevant statute defines a sale as a "contract to sell," and thus the Purchase Agreements were sales, not offers to sell.

In their original summary judgment motion, Defendants argued that the limitations period should run from the signing of the Purchase Agreements, as the Purchase Agreements constituted sales under Nevada Revised Statutes § 90.280. (Defs.' Mot. Partial Summ. J. (Doc. #160) at 35.) Plaintiffs responded to this argument in a footnote as follows:

> Defendants cite N.R.S. 90.280's definition of "sale" for the proposition that the alleged securities violation takes place when the Purchase Agreement is signed. In reality, N.R.S. 90.280 defines "sale" to mean "_every_ contract of sale, contract to sell, _or other disposition_, of a security or interest in a security for value." (emphasis added). Therefore, it is unclear that the alleged violations accrued as a matter of law on the date of signature of each of the Purchase Agreements.

4

> Rather, the closing dates for the sales of the units, coupled with signatures of rental agreements, are also relevant facts for the trier of fact to consider in determining when Plaintiffs' causes of action accrued and whether Plaintiffs' claims are time-barred by a statute of limitations.

(Pls.' Opp'n to Defs.' Mot. Partial Summ. J. (Doc. #181) at 30-31 n.6 (internal citation omitted.)  In the initial briefing, Plaintiffs did not cite any of the authority in their Motions for Reconsideration or argue that the Purchase Agreements were offers to sell, not sales. Plaintiffs could have raised the arguments they now assert and presented the supporting authority in the prior briefing, but did not do so.  Plaintiffs do not identify any newly discovered evidence or change in the law which would explain why these arguments and authorities could not have been presented in the initial briefing.

Further, the Court's prior ruling was not clearly erroneous or manifestly unjust. The parties dispute the meaning of Nevada's securities laws.  Nevada never has addressed the meaning of the statutory provisions at issue in this case.  The Court therefore must predict how Nevada's highest court would resolve the issue.  <u>Giles v. Gen. Motors Acceptance Corp.</u>, 494 F.3d 865, 872 (9th Cir. 2007).  "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."  <u>Id.</u> (quotation omitted).

Under Nevada law, statutory construction is a question of law for the Court. <u>Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.</u>, 156 P.3d 21, 23 (Nev. 2007).  The Court begins with the statute's plain language, giving effect to any unambiguous language.  <u>Id.</u>  If the statutory language is ambiguous, the Court must "examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent."  <u>Id.</u>  The Court construes the statute "as a whole" such that no words or phrases are rendered "superfluous" or "nugatory."  <u>Mangarella v. State</u>, 17 P.3d 989, 991 (Nev. 2001) (quotation omitted).  The Court presumes that "every word, phrase,

5

1 and provision in the enactment has meaning." Id.

2 Nevada looks to federal securities laws to determine the meaning of its own
3 securities laws where the two statutes use similar language. State v. Friend, 40 P.3d 436,
4 439-40 (Nev. 2002). However, where Nevada law departs from federal law, the Court
5 assumes the difference was deliberate. Lane v. Allstate Ins. Co., 969 P.2d 938, 940 (Nev.
6 1998).

7 Nevada Revised Statutes § 90.460 makes it unlawful to "offer to sell or sell"
8 unregistered, non-exempt securities in the State. Section 90.280 defines a "sale" as "every
9 contract of sale, contract to sell, or other disposition, of a security or interest in a security
10 for value," and "'[s]ell' has a corresponding meaning." An "offer to sell" means "every
11 attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in
12 a security for value." Nev. Rev. Stat. § 90.280(1). Section 90.660(1) imposes civil liability
13 on anyone who "offers or sells" a security in violation of § 90.460. A plaintiff must bring a
14 claim under § 90.660 "within the earliest of 2 years after the discovery of the violation, 2
15 years after discovery should have been made by the exercise of reasonable care, or 5 years
16 after the act, omission or transaction constituting the violation." Nev. Rev. Stat. § 90.670.

17 Under the plain language of Nevada's securities laws, Plaintiffs' Purchase
18 Agreements are sales, not offers. The executed Purchase Agreements were binding
19 contracts, fully enforceable by both sides. (Defs.' Opp'n to Mot. Summ. J. (Doc. #151),
20 Exs. 53-111.) They therefore are not offers, as Plaintiffs attempt to characterize them in the
21 present briefing. Rather, the Purchase Agreements are contracts of sale or contracts to sell
22 securities. Indeed, Plaintiffs asserted a breach of contract claim based on the 2004 Purchase
23 Agreements in the Third Amended Complaint, and Plaintiffs therein alleged that the 2004
24 Purchase Agreements were "valid and binding." (Third Am. Compl. (Doc. #89) at 25-26.)
25 The Court partially denied Defendants' summary judgment motion on Plaintiffs' breach of
26 contract claim based on an alleged breach of the Purchase Agreements' terms. (Order (Doc.

#230) at 10-14.) Plaintiffs' attempt to now characterize the Purchase Agreements as "offers" is inconsistent with their prior position that the Purchase Agreements are binding contracts. More importantly, characterizing binding executed sales contracts as offers is at odds with the statutory language defining an offer as a solicitation or attempt to dispose of a security.

Plaintiffs rely on United States v. Kormel, Inc., 230 F. Supp. 275 (D. Nev. 1964), for the proposition that the limitations period should run from the closings because a sale is not final until all payments are made and title is transferred. Kormel, however, is distinguishable on numerous bases. Kormel interpreted provisions of the federal securities laws which define both a violation and a sale differently than the Nevada securities laws. Under the federal securities section at issue in Kormel, a violation consists of using the mails or facilities of interstate commerce to defraud "in the offer or sale" of securities. Kormel, 230 F. Supp. at 277-78; 15 U.S.C. § 77q. The Kormel court thus concluded that–

> [r]epresentations made to an investor to induce him to continue payments under an existing stock subscription contract are made 'in the offer or sale' of the stock within the clear meaning of the Act and the Order. A sale under the type of subscription contract here involved was not complete until the whole purchase price was paid and upon full payment, the company would deliver the shares purchased.

230 F. Supp. at 278.

The Kormel court was not analyzing when a sale occurred for purposes of triggering the statute of limitations, and Kormel was analyzing a fraud claim, not a failure to register claim. Moreover, the Nevada statutes do not define a non-registration violation as one occurring "in the . . . sale" as the federal statute in Kormel did. Rather, § 90.460 makes it a violation to "sell" an unregistered security. The federal statute at issue in Kormel thus was broader in terms of what conduct might constitute fraud "in the . . . sale" under federal securities law, rather than what constitutes a "sale" of an unregistered security under Nevada law. Further, the federal statute at issue in Kormel defined a "sale" or "sell" to

7

"include every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3).  The federal statute does not contain the language in Nevada securities law that a "contract to sell" securities also constitutes a sale.

The other cases upon which Plaintiffs rely are similarly distinguishable.  In Husted v. Amrep Corp., the court held the limitations period for a claim under 15 U.S.C. § 1703(b)(2) ran from post-sale misrepresentations aimed at inducing the buyer to continue to make payments on an interstate land sale.  429 F. Supp. 298, 307-09 (S.D.N.Y. 1977).  At the time Husted was decided, § 1703(b)(2) prohibited misrepresentations "in selling or leasing . . . to obtain money or property."  Id. at 307 (quoting 15 U.S.C. § 1703(a)(2)(B)).  The Husted court concluded that under this language, post-sale misrepresentations to encourage future payments on a contract were actionable violations, and the limitations period would run from the last such act.  Id. at 307-09.  In reaching its conclusion, the Husted court distinguished other sections of the relevant statute which made it unlawful "to sell or lease" by prohibited means.  Id. at 307.  The federal statutory section which Husted interpreted varies greatly from the non-registration provision in Nevada securities law, and thus Husted is of little interpretive guidance.

In re Los Angeles Land & Investments, Ltd. is similarly unhelpful.  In that case, the court stated in its factual background that the seller of security interests in land who was subject to an injunction could not continue to service installment payments from buyers "because each monthly payment under the installment contract would constitute a further sale in violation of the Securities Act of 1933 since the sale of a security is not completed until the purchase price has been paid in full."  In re L.A. Land & Invs., Ltd., 282 F. Supp. 448, 450 (D. Haw. 1968).  However, the court was not analyzing the issue itself, was not addressing the statute of limitations, and had before it claims under a differently-worded federal statute.  Id.

The court in SEC v. North American Finance Co. held subscription option

agreements were offers to sell where the subscriber's decision to purchase more shares under the subscription was "optional, and if he 'does not wish to exercise the subscription option or any balance thereon, it is cancelled at no further obligation to the subscriber.'" 214 F. Supp. 197, 202 (D. Ariz. 1959). That optional agreements to purchase securities are offers does not alter the binding nature of the Purchase Agreements in this case.

Finally, in United States v. Robertson, the court was tasked with determining whether the post-sale deposit of a check constituted use of the mails and the facilities of interstate commerce "in the sale" of securities under federal law. 181 F. Supp. 158, 161 (S.D.N.Y. 1959). The Robertson court concluded that because payment was:

> an essential element in consummating the sale transaction, the defendants' use of the mails or the facilities of interstate commerce in depositing the checks or in transmitting them for collection . . . constitutes a use of the mails or the facilities of interstate commerce 'in the sale' of securities within the meaning of [15 U.S.C.] section 77q(a)(1).

Id. at 163. Because a federal securities violation does not occur under § 77q(a)(1) until there is a use of the mails or the facilities of interstate commerce "in the sale" of securities, interpreting when such a claim accrues sheds little light on when a claim for the "sale" of an unregistered security accrues for statute of limitations purposes under Nevada securities law. See Bryant v. Uland, 327 F. Supp. 439, 447 (D. Tex. 1971) (noting that federal courts have "found it necessary to look at later stages of the transaction, such as payment or delivery, to find a violation because all previous stages of the transactions in question were carried on intrastate and were not in violation of the Act. One cannot conclude from these cases that if each successive stage of the transaction violates the Act the statute of limitations expands concomitantly.").

The Purchase Agreements are executed and binding contracts and thus are "contracts of sale" under § 90.280. Alternatively, the Purchase Agreements are "contracts to sell" securities, a term that by its plain language implies some future conduct or event

9

1  will consummate the transaction.  Consequently, to the extent Plaintiffs' Motions to
2  Reconsider are based on the difference between offers and sales, or that the Purchase
3  Agreements are offers and not sales, the Court will deny the Motions.
4  		Although Plaintiffs' argument on reconsideration largely revolves around the
5  distinction between an offer to sell and a sale, the Court understands Plaintiffs to be arguing
6  that the limitations period should run from the last act consummating the sales transaction,
7  and that any such act can constitute a new violation as some "other disposition" of the
8  security under § 90.280's definition of a sale.  Defendants argue that because the statute of
9  limitations is triggered within the earliest of two years after the discovery of the violation or
10  five years after the violation, the limitations period is not re-triggered by post-sales events
11  or conduct.
12  		Nevada has not addressed whether the limitations period for a non-registration
13  claim runs from the initial sales contract only, or whether it can be triggered by post-sale
14  acts consummating the transaction, such as future payments or closing.  However, other
15  courts which have interpreted similarly worded state statutes have concluded that the
16  limitations period runs from the moment the parties become irrevocably bound in the
17  transaction.  See Wilson v. Al McCord Inc., 858 F.2d 1469, 1473 (10th Cir. 1988)
18  (interpreting Oklahoma's securities law defining "sale" the same as Nevada and holding
19  that the limitations period ran from the execution of the agreement even though final
20  completion costs were not paid until later); Cali-Ken Petroleum Co. v. Miller, 815 F. Supp.
21  216, 217-18 (W.D. Ky. 1993) (interpreting Kentucky's securities law defining "sale" the
22  same as Nevada and holding the limitations period ran from the moment the parties' rights
23  and duties became fixed); Adams v. Smith, 734 P.2d 843, 845-46 (Okla. Ct. App. 1986)
24  (interpreting Oklahoma's securities law defining "sale" the same as Nevada and holding
25  that limitations period ran from the date the parties entered a binding agreement even if the
26  agreement called for later installment payments).  For example, the Oklahoma Court of

Appeals in <u>Adams</u> rejected the "continuing violation" theory whereby the limitations period would be re-triggered every time a party made an installment payment on an obligation already owed. 734 P.2d at 845-46. Rather, "[t]he violation which commences the running of the statute must be the first violation. Otherwise, the statute of limitations would be rendered meaningless." <u>Id.</u> at 846 (quoting <u>Bryant</u>, 327 F. Supp. at 447) (emphasis omitted).[1]

       Based on this authority, as well as the language and structure of the Nevada securities law, the Court concludes Nevada likewise would hold that the "sale" is complete at the moment the parties are irrevocably bound to perform. The Court predicts Nevada also would hold that the first violation commences the running of the limitations period, and later events or acts related to the same sale, such as payments or the closing, do not constitute a new violation or re-trigger the limitations period. Section 90.670 requires a plaintiff to bring his or her claim "within the earliest" of two years after discovery of the violation or five years after the violation. The Nevada Legislature therefore intended plaintiffs in non-registration cases to bring their claims quickly. Allowing a plaintiff to extend or re-trigger the limitations period in relation to the same sale would undermine this legislative intent. The Court therefore will deny Plaintiffs' Motions to Reconsider to the extent they rest on the argument that the limitations period should run from later payments or the closing.

**C. Plaintiff James**

       In their original Motion for Partial Summary Judgment, Defendants argued that Plaintiff James's claims for two of her units were barred even though she signed the

---

[1] Federal courts interpreting federal failure-to-register provisions have reached a similar conclusion. <u>See</u> <u>Lubin v. Sybedon Corp.</u>, 688 F. Supp. 1425, 1451-52 (S.D. Cal. 1988); <u>Holloway v. Combined Equities, Inc.</u>, 628 F. Supp. 59, 60-61 (M.D. La. 1986); <u>Rochambeau v. Brent Exploration, Inc.</u>, 79 F.R.D. 381, 384 (D. Colo. 1978); <u>Bryant</u>, 327 F. Supp. at 446-47; <u>see also</u> <u>Amoroso v. Sw. Drilling Multi-Rig P'ship No. 1</u>, 646 F. Supp. 141, 143, 145 (N.D. Cal. 1986)

11

1  Purchase Agreements related to those two units within the limitations period.  (Defs.'
2  Countermot. for Partial Summ. J. (Doc. #160) at 35.)  Defendants argued that because she
3  purchased other units for which the limitations period had expired, James could not re-
4  trigger the limitations period by buying new units.  (Id.)  Plaintiffs did not respond to this
5  argument during the original summary judgment briefing.  Plaintiffs now move for
6  reconsideration, arguing the limitations period could not run prior to the time a plaintiff
7  purchases the security at issue.

8  Plaintiffs could and should have responded to Defendants' argument regarding
9  Plaintiff James in the original briefing.  However, the Court concludes that declining to
10 reconsider as to James would be manifestly unjust.  As discussed above, Nevada would
11 follow other courts in ruling that the relevant inquiry is when the plaintiff makes the
12 investment decision and both parties are irrevocably bound to perform.  Under this standard,
13 the purchase of each condominium unit was a separate investment decision.  James was not
14 bound to purchase unit 1018 or unit 1604, and Defendants were not bound to sell those
15 units to James, until the parties mutually agreed to enter into separate Purchase Agreements
16 for each unit.  Consequently, each Purchase Agreement is a sale which constitutes an
17 independent violation for sale of an unregistered security.  See Adams, 734 P.2d at 846
18 ("Each individual letter agreement was a separate sale and had no relation to succeeding
19 agreements.").

20 Defendants' position that a plaintiff's claim could be barred as untimely before it
21 even accrues is at odds with the statutory language.  Section 90.670 states the limitations
22 period runs from the discovery of the violation or from the act constituting the violation,
23 and under § 90.460 the violation is the sale of the unregistered security.  The limitations
24 period thus runs from each violation, i.e., each sale, and not from the plaintiff's discovery
25 that the security was unregistered as a general matter.

26 Moreover, it would be anomalous to hold the limitations period for a plaintiff's

claim expired before the claim even accrued absent an unambiguous statutory command to do so.  Under Nevada law, the limitations period generally runs from "the day the cause of action accrued," and a "cause of action 'accrues' when a suit may be maintained thereon." Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997).  Plaintiff James could not have brought suit on her purchases of units 1018 and 1604 until the parties executed the Purchase Agreements related to those units in December 2006 and January 2007.  (Defs.' Mot. Partial Summ. J., Exs. 61-62.)  Under § 90.670 and the Court's prior ruling, James had two years from the date the Purchase Agreements were executed in relation to these two units in which to bring suit.  Due to tolling of the limitations period by a related class action filed on December 5, 2008, James's non-registration claims were timely when added to the Third Amended Complaint (Doc. #89) on October 18, 2010.  (Pls.' Mot. for Recons. (Doc. #241), Exs. 18-19); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983); Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553-54 (1974).

Thus, despite Plaintiffs' failure to respond on this issue in the initial briefing, Defendants failed to meet their initial burden under Federal Rule of Civil Procedure 56 to show they are entitled to judgment as a matter of law.  Failure to reconsider therefore would be manifestly unjust, and the Court will grant Plaintiffs' Motion for Reconsideration (Doc. #241) on Plaintiff James's non-registration claims contained in count fifteen of the Third Amended Complaint as to units 1018 and 1604.  Additionally, because the Court already ruled that Defendants sold unregistered securities, the Court will grant summary judgment in Plaintiff James's favor as to liability on the purchases of units 1018 and 1604 based on Defendants' sale of an unregistered security in relation to these two units.

**II. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Reconsideration of Ruling Dismissing Plaintiffs' State Securities Claims Based Upon the Statute of Limitations (Doc. #238) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Clarify and for Reconsideration Granting Partial Summary Judgment to Certain Plaintiffs (Doc. #241) is hereby GRANTED in part and DENIED in part.  The Motion is granted in that the Court hereby amends its prior Order (Doc. #229) to grant partial summary judgment in Plaintiff Sandi James's favor and against Defendants on the issue of liability for count fifteen of the Third Amended Complaint (Doc. #89) with respect to Plaintiff Sandi James's purchases of units 1018 and 1604 only.  The Motion is denied in all other respects.

DATED: October 1, 2012

_____
PHILIP M. PRO
United States District Judge